**PINEAPPLE GROWERS ASSOCIATION OF HAWAII, Petitioner,**

v.

**FOOD AND DRUG ADMINISTRATION, Respondent.**

No. 80–7521.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1982.

Decided April 7, 1982.

Clausen Ely, Jr., Covington & Burling, Washington, D. C., for petitioner.

John J. Powers, III, Dept. of Justice, Washington, D. C., argued for respondent; Mark C. Del Bianco, Washington, D. C., on brief.

Before MERRILL, TRASK and PREGERSON, Circuit Judges.

MERRILL, Circuit Judge:

Pineapple Growers Association of Hawaii (PGAH) petitions for review of an order of the Food and Drug Administration (FDA) overruling without hearing PGAH's objections to certain amended regulations governing standards of identity for canned pineapple, and confirming the effective date of those regulations.

The regulations were promulgated pursuant to Section 401 of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 341.[1] The procedures for promulgation of such regulations are set forth in 21 U.S.C. § 371(e).[2]

The United States is a member of the World Health Organization and of the Food and Agriculture Organization of the United Nations. The Codex Alimentarius Commission formed by those organizations adopts recommended standards for food products which member countries are then obliged to consider for adoption. See 37 Fed.Reg. 21102 (1972). In the United States this is done by FDA promulgation of regulations under § 341.

In 1973, the FDA promulgated a regulation providing that "[a]ny interested person may petition [FDA] to adopt a Codex standard ... by proposing a new standard or an appropriate amendment of an existing standard...." 21 C.F.R. § 130.6 (1981). Such petitions are to be published by the FDA in the Federal Register. Id.

Pursuant to this regulation, the California Canners and Growers (Growers), a cooperative organization, petitioned FDA to amend the United States canned fruit identity standards for ten fruits, including pineapple. The organization noted that much of the fruit produced by its members was marketed internationally and that adoption of the Codex standards would facilitate international trade.

1. That section provides in part:
   Whenever in the judgment of the Secretary such action will promote honesty and fair dealing in the interest of consumers, he shall promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity, a reasonable standard of quality, and/or reasonable standards of fill of container....

2. Subsection (e)(1) provides that the procedures shall commence with a proposal by either the Secretary or any interested party that standards of identity be established. The proposal is then published by the Secretary and interested persons are invited to present their views. The Secretary then, by order, takes action on the proposal and publishes his order.
   Subsection (e)(2) provides that within 30 days of publication of the order any person adversely affected by the order may file objections to it "specifying with particularity the provisions of the order deemed objectionable, stating the grounds therefor, and requesting a public hearing upon such objections." This operates to stay the effectiveness of that portion of the order objected to.
   Subsection (e)(3) provides in part:
   As soon as practicable after such request for a public hearing, the Secretary, after due notice, shall hold such a public hearing for the purpose of receiving evidence relevant and material to the issues raised by such objections. At the hearing, any interested person may be heard in person or by representative. As soon as practicable after completion of the hearing, the Secretary shall by order act upon such objections and make such order public. Such order shall be based only on substantial evidence of record at such hearing and shall set forth, as part of the order, detailed findings of fact on which the order is based....

The FDA published the Growers' proposed amended standards of identity in January 1974. 39 Fed.Reg. 2368 (1974). PGAH objected to the proposal on the grounds that representatives of the United States pineapple industry had not been consulted as to its wisdom, and that it would facilitate foreign competition to the detriment of Hawaiian pineapple producers. PGAH also proposed a substitute amendment to the standards of identity for pineapple. As a result of the PGAH objections, the Growers' proposed amendment as to pineapple was stayed while the standards for other fruits were amended to bring them into line with the Codex standards. See 40 Fed.Reg. 5762 (1975).

In July 1979, six years after the Growers had first advanced their proposal and after PGAH had twice submitted revised petitions to amend the pineapple standards, FDA in a final rule adopted the standards now at issue. 44 Fed.Reg. 40276 (1979). PGAH objected to the final rule insofar as it (1) authorized "pieces or irregular pieces" as an additional style of canned pineapple,[3] and (2) authorized "pineapple juice and water" as an optional packing medium for all styles of canned pineapple.[4] On June 27, 1980 FDA published a revised final rule rejecting PGAH's objections and denying its hearing request. 45 Fed.Reg. 43389 (1980). PGAH petitioned for reconsideration on July 25, 1980, but FDA denied the petition on April 3, 1981, stating that PGAH's objections were inadequate to justify a hearing. The present petition for review followed. The question presented is whether FDA's denial of the PGAH hearing request was in violation of PGAH's rights under § 371(e)(3).

PGAH asserts that its petition presents factual issues bearing upon its contention that the new pineapple standards will confuse, mislead, and disappoint consumers; and that the Act grants a right to hearing upon those issues which it is beyond the discretion of the FDA to deny. It contends that the legislative history of the Act establishes that Congress intended to require FDA to conduct hearings whenever an adversely affected party interposes objections.[5]

■■■ It is now clearly the law, however, that the language of § 371(e)(3) does not require a hearing in every case in which an adversely affected person files an objection. The provision of § 371(e)(2) that the objections must state the grounds therefor would seem to make it clear that FDA is to appraise the sufficiency of those grounds. At a minimum an objection to a proposed regulation must raise a material issue concerning which a meaningful hearing might be held. As the court stated in *Dyestuffs and Chemicals, Inc. v. Flemming*, 271 F.2d 281, 286 (8th Cir. 1959), *cert. denied*, 362 U.S. 911, 80 S.Ct. 681, 4 L.Ed.2d 619 (1960):

> The objections must raise "issues." The issues must be material to the question involved; that is, the legality of the order attacked. They may not be frivolous or inconsequential. Where the objections stated and issues raised thereby are, even if true, legally insufficient, their effect is a nullity and no objections have been stated. Congress did not intend the governmental agencies created by it to perform useless or unfruitful tasks.

---

**3.** The "pieces or irregular pieces" style is defined as "consisting of irregular shapes and sizes not identifiable as a specific style and does not include chunks." 21 C.F.R. § 145.-180(a)(2). The final rule authorized nine other pineapple styles: slices, half slices, quarter slices, broken slices, spears, tidbits, chunks, cubes, and crushed. *Id.*

**4.** PGAH also objected to a requirement that all canned pineapple be prepared from "fresh mature pineapple." FDA granted its request for elimination of this standard. 45 Fed.Reg. 43389 (1980).

**5.** As originally enacted, the Act required that formal hearings be held in conjunction with all proposed standards of identity regardless whether they were controversial. *See* Federal Food, Drug, and Cosmetic Act, ch. 675, § 701, 52 Stat. 1055 (1938). The current § 371(e) procedures were adopted by amendment to the Act in 1954. Pub.L.No.335, 68 Stat. 55 (1954). PGAH contends that by this amendment Congress intended to maintain the hearing requirement except as to those standards to which no objection is raised.

In contending that a hearing is required, petitioner relies on *Pactra v. Consumer Product Safety Commission*, 555 F.2d 677 (9th Cir. 1977), where this Court interpreted § 371(e) to require a hearing in cases where objections are filed.[6] Even there, however, the Court explicitly limited its holding to cases where "material" issues of fact are raised "that should not be dispelled at the outset without a hearing." *Id.* at 684. We required that the objections be "made in good faith" and be "neither frivolous nor inconsequential." *Id.* The question then is whether PGAH has satisfied this minimum standard. In our judgment, it has not. We hold that material issues of fact have not been raised and that the objections here asserted are inconsequential.

As noted above, PGAH objects to the Codex standard for pineapple insofar as it authorizes a "pieces or irregular pieces" style of pack and "pineapple juice and water" as a packing medium.[7] The basis of its objection to the pieces style is its assertion that American consumers, heretofore unfamiliar with the style, would not anticipate the wide disparity in size and shape of fruit units it signifies, would be confused by the new style, and would be misled by "failure of the prescribed name truthfully to disclose the irregularity of fruit units within the style."

We note first that failure of the word "pieces" to disclose irregularity in size and shape can hardly be characterized as untruthful. Nothing in the common usage of other words used to designate styles of pack, e.g., "tidbits," "chunks," or "cubes or dice," suggests uniformity or lack of uniformity in size or shape. As to these styles, consumers have come to expect substantial uniformity in fruit units as a result of regulations governing permissible variations in size and shape. *See* 21 C.F.R. § 145.-

180(b)(ii). It was not use of the name or style that led consumers to expect uniformity, it was that consumer use of the pack had brought familiarity with it. A comparable regulation will apply to the pieces style. 21 C.F.R. § 145.180(b)(ii)(h). Thus, just as consumers have become familiar with existing styles of pack, as they sample the pieces style they will come to develop accurate expectations as to what the "pieces" label describes.

■ No factual issue is raised as to lack of American familiarity with the pieces style. FDA concedes it and a hearing is not required to establish it.[8] Accordingly, the only question raised is whether this lack of familiarity presents a valid ground for objection to the standard. We agree with FDA that it does not. As the agency noted in denying PGAH's petition for reconsideration, if consumer unfamiliarity with a new food standard were sufficient to preclude its authorization, American consumers would be forever barred from the opportunity to become acquainted with any new product or product style. This simply cannot be said to be in the consumers' best interests.

■ PGAH's objection to "pineapple juice and water" as a packing medium rests on its assertion that the label does not adequately disclose the amount of water in the mixture. Again FDA concedes this uncertainty. The only question then is whether it constitutes a valid ground for objection. We agree with FDA that it does not.

The regulations require that a fruit juice and water packing medium contain at least 50% fruit juice. 21 C.F.R. § 145.3(i). The fruit juice and water medium is authorized for other canned fruits including peaches,

---

**6.** The Federal Hazardous Substances Act, 15 U.S.C. §§ 1261–1274, pursuant to which the regulation at issue was promulgated, incorporates the § 371(e) administrative hearing scheme.

**7.** We reiterate that as to both objections the standards in question, as Codex standards, are available elsewhere throughout the world. It is

only the American consumer with whom we are concerned.

**8.** We note, however, that the "pieces or irregular pieces" style was authorized for canned peaches, apricots, and pears over seven years ago. *See* 40 Fed.Reg. 5762 (1975).

pears and apricots.[9] To contend that a consumer acquainted with the packing medium as used with these fruits would expect anything different in the case of pineapples, or that the pineapple consumer is more likely to be misled than the consumer of other fruits, to us verges on the frivolous. Where the proportions of a mixture of two ingredients are not specified, equal parts is certainly not an unreasonable expectation. At a minimum, that expectation is here fulfilled.

The orders confirming the effective dates of the standards of identity and denying reconsideration are AFFIRMED.

9. Apricots, 21 C.F.R. § 145.115(a)(3)(i)(b); peaches, 21 C.F.R. § 145.170(a)(3)(i)(b); pears, 21 C.F.R. § 145.175(a)(3)(i)(b).